Daniel R. Watkins
Nevada State Bar No. 11881
DW@wl-llp.com
Joseph M. Ortuno
Nevada State Bar No. 11233
jortuno@wl-llp.com
WATKINS & LETOFSKY, LLP
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Office:(702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Sean Gouthro

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SEAN GOUTHRO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TESLA MOTORS, INC.; DOES 1- 50,<br><br>　　　　　Defendants. | Case No.: 2:20-cv-00286<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMES NOW, Plaintiff, Sean Gouthro and files this civil action against Defendants, and each of them, for violations of The Sarbanes Oxley Act, Breach of Good Faith and Fair Dealing, Tortious Discharge, and Breach of Contract.

//
//
//
//
//
//
//
//
//

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 18 U.S.C. § 1514A(b)(1)(B).
2. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.
3. Plaintiff has exhausted his administrative remedies.
4. All conditions precedent to jurisdiction under section 18 U.S.C. § 1514A, et seq. have occurred or been complied with:
    a. Plaintiff alleged his allegations and filed a complaint with the Occupational Safety and Health Administration ("OHSA") via their Whistle Blowing Program within 180 days of the violations alleged herein.
    b. Plaintiff and OSHA abided by the complaint procedures required under 29 CFR Part 1980, et seq.
    c. OSHA has not issued a final decision within 180 days of the filing of Plaintiff's OSHA complaint.  The delay was not due to the bad faith of the claimant.
5. Venue is proper in the District of Nevada because the unlawful employment practices alleged herein were committed in whole or in part in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

## PARTIES

## PLAINTIFF

6. Plaintiff, Sean Gouthro (hereinafter "GOUTHRO"), was a qualified/eligible "employee" of defendant Tesla Motors, Inc. (hereinafter "TESLA").
7. Plaintiff worked for TESLA at its Gigafactory located at 1 Electric Avenue, Sparks, NV 89434.

//
//

## DEFENDANTS

8. At all relevant times, Defendant TESLA was and is a Delaware corporation qualified to do business in Nevada. Defendant TESLA is listed on the NASDAQ as TSLA.

9. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiff will seek leave to amend this Complaint when the true names, capacities, participation and responsibilities have been ascertained.

## STATEMENT OF FACTS

10. On or about November 28, 2017, TESLA made a written offer of employment to GOUTHRO. The position offered was Investigations & Security Control Center Supervisor at the Gigafactory. TESLA offered an annual salary of $80,000.00 with stock options valued at $20,000.00 per year.

11. On or about November 28, 2017, GOUTHRO accepted the offer and was hired as an Investigations & Security Control Supervisor with TESLA.

12. GOUTHRO was responsible for supervising one of several teams of security personnel at the Gigafactory. GOUTHRO's team was specifically tasked investigation of various security concerns throughout the factory.

13. During the course of his employment with TESLA, GOUTHRO and his team were involved in numerous investigations at the Gigafactory, including but not limited to, the investigation of (1) thefts occurring at TESLA's Gigafactory which were costing TESLA and their investors somewhere between $37 to $150 million dollars; (2) the association of Mexican Drug Cartel members and their alleged narcotic trafficking at TESLA's Gigafactory; (3) TESLA's response to alleged whistleblowers, including

Martin Tripp, Karl Hansen, and Lynn Thompson; and (4) improper conduct relating to union contracting activities.

14. The investigation by GOUTHRO and his team regarding the thefts at TESLA is significant because (1) the thefts at TESLA's Gigafactory were in excess of $37 to $150 million dollars, which is a significant portion of its quarterly earnings; (2) the thefts were carried out by TESLA employees, contractors, and/or individuals impersonating TESLA contractors; and (3) the thefts established links with organized criminal elements.

15. The investigation by GOUTHRO and his team of the Mexican drug cartel is significant because it established a link that corroborates law enforcement's investigation that organized criminal elements had ties to TESLA's Gigafactory. *See for example* USA v. Mora, et al., Nevada District Court, Case No.: 3:18-mj-00102.

16. The investigation by GOUTHRO and his team about the improper contracts is significant because the contracts were awarded by senior TESLA management and cost TESLA millions of dollars. For example, one contract in particular cost TESLA approximately $900,000 for a job that would normally cost $65,000 to $75,000 to complete.

17. During the course of his employment, GOUTHRO witnessed TESLA unlawfully surveil its Gigafactory employees on several occasions. GOUTHRO witnessed the installation of electronic equipment at the Gigafactory that would capture incoming/outgoing data from employees' personal electronic devices. GOUTHRO also witnessed TESLA target a specific TESLA employee's cellular device to obtain private information from that device during an investigation. GOUTHRO believed these actions to be in violation of law and acts that could place himself, TESLA and/or its employees at risk of substantial criminal and civil liability.

18. During GOUTHRO's employment, TESLA hired Jeff Jones, Uber's former head of security, and former Uber security employees Nick Gicinto and Jacob Nocon.

19. During the course of his investigations, GOUTHRO learned that TESLA Senior Manager of Global Security, Nick Gicinto and his team were spying on TESLA employees using devices to monitor emails, cell phones, and data communications from TESLA employees. GOUTHRO expressed concern to his supervisors, including but not limited to, Gerhard Pretorius, Jeff Jones, Nick Gicinto, Jacob Nocon, and TESLA's human resources and legal departments, regarding what he believed was illegal conduct.

20. While at Uber, Jeff Jones, Nick Gicento, and Jacob Nocon all allegedly engaged in numerous illegal methods of investigations such as wiretapping and hacking. Their behavior is described in a document referred to in the "Jacobs Letter," a document produced in Waymo LLC v. Uber Technologies, Inc., filed in the United States District Court, District of Northern California, Case No.: 17-cv-00939-WHA, as Document No.: 2401 (https://www.documentcloud.org/documents/4330131-Waymo-Uber-Jacobs Letter.html).

21. GOUTHRO worked with Jones, Nocon and Gicinto at TESLA. While working with such individuals, GOUTHRO became aware that the organizational structure and practices outlined in the "Jacobs Letter," reflected a similar structure and practices being deployed against employees of TESLA.

22. GOUTHRO witnessed illegal activities conducted by Jeff Jones' team which included the hacking and wiretapping into former employee Martin Tripp's computer and phone.

23. GOUTHRO became aware that Jones' team installed routers at the Gigafactory that were capable of intercepting and collecting employee phone communications which GOUTHRO believed would be in violation of Federal and State laws and was material information that should be disclosed to shareholders.

24. The disclosure of the tactics used by such individuals while with Uber was reported by numerous press outlets and Uber was forced to publicly disassociate itself from such tactics. GOUTHRO believes that maintaining the employment of such employees and

condoning or encouraging the continued use of such illegal tactics is very material to TESLA and its shareholders.

25. Throughout his investigations, GOUTHRO reported his and his team's findings of unlawful conduct up the chain of command to his superiors, including but not limited to, Gerhard Pretorius, Jeff Jones, Nick Gicinto, Jacob Nocon, and TESLA's human resources and legal departments.

26. GOUTHRO reasonably believed, and still believes, that the findings from his and his team's investigations create an obligation on TESLA's part to report to its shareholders the thefts, improper award of contracts, organized crime connections, and employee surveillance. GOUTHRO reasonably believed, and still believes, that the findings from his and his team's investigations, had they been further investigated, would have led to further information that would create an obligation on TESLA's part to report to its shareholders the thefts, improper award of contracts, organized crime connections, and employee surveillance. To GOUTHRO's knowledge, TESLA has not reported the above matters to shareholders.

27. GOUTHRO learned of a contractor by the name of Lynn Thompson who discovered TESLA employees stealing about $13,000 of copper wire. Mr. Thompson made a report about the theft to local law enforcement. On or about June 7, 2018, Lynn Thompson was terminated from his position for making his report to law enforcement.

28. On or about June 19, 2018, a member of GOUTHRO's team named Karl Hansen was similarly terminated for his involvement in the investigation and reporting the above-referenced thefts, criminal activities, improper contracts, and employee surveillance.

29. TESLA was systematically terminating employees who reported events, issues, and/or criminal activity at the Gigafactory that might reflect poorly upon the company and be perceived negatively by TESLA's shareholders.

30. GOUTHRO reasonably believed, and still believes, that the actions of TESLA, as described herein, including but not limited to, wiretapping/surveilling employees' personal electronic devices, withholding of relevant information from the public and its

shareholders, violating various state contracts, and the systematic termination of employees who reported illegal activities and/or participated in whistleblowing activities, was illegal pursuant to state and federal law, and that his participation is said activities could place him in jeopardy of criminal or civil liability.

31. GOUTHRO continued reporting his TESLA's illegal practices and his team's findings higher up the chain of command. Due to his reporting of the criminal activities taking place at the Gigafactory and the criminal activities engaged in by TESLA, and because of the perceived significance of these matters to its shareholders, and TESLA's desire to cover-up these matters and continue with its illegal practices, TESLA terminated GOUTHRO on December 12, 2018.

32. GOUTHRO was terminated under the pretext of performance issues despite the fact that his performance evaluations consistently stated that he was meeting or exceeding expectations.

**COUNT I**
**BREACH OF CONTRACT**
**(Against All Defendants)**

33. Plaintiff hereby incorporates paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. TESLA offered Plaintiff a position as an Investigations & Security Control Center Supervisor at a rate of $80,000.00 per year, plus stock option incentives.

35. Plaintiff accepted TESLA's offer and started working and performing the terms agreed to under his contract. Specifically, Plaintiff began working as an Investigations & Security Control Center Supervisor for Defendant TESLA.

36. Various employee handbooks, policies and procedure documents, and code of conduct manuals were codified into the employment contract between GOUTHRO and TESLA.

37. TESLA breached its contract with Plaintiff by terminating Plaintiff's position and rate of pay without cause as required by the contract.

38. TESLA breached its contract with Plaintiff by failing to compensate Plaintiff with the vested stock options as agreed to in the employment contract.

39. TESLA's breach caused Plaintiff damages as alleged in the Prayer for Relief below.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

40. Plaintiff hereby incorporates paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. Plaintiff and TESLA entered into a valid contract for employment.

42. Plaintiff justifiably expected to receive the benefits of the employment contract. To wit, income through employment and the future vesting of his stock option shares.

43. Plaintiff did all, or substantially all, of the things the employment contract required of him.

44. TESLA deliberately and unfairly interfered with Plaintiff's right to the benefits of the employment contract when they terminated Plaintiff's employment.

45. TESLA's termination of Plaintiff was deliberate, oppressive and malicious.

46. TESLA's termination of Plaintiff was done with the intent to deprive Plaintiff of his rights to his future vesting stock options, to cover up illegal activity occurring at the Gigafactory, and to prevent its shareholders from learning about said unlawful activities.

47. TESLA's breach caused Plaintiff damages as alleged in the Prayer for Relief below.

## COUNT III
## WHISTLEBLOWER – SARBANES OXLEY ACT
**(Against All Defendants)**

48. Plaintiff hereby incorporates paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. Plaintiff was an employee of TESLA.

50. Plaintiff engaged in a protected activity. Specifically, Plaintiff reported misconduct by TESLA to his internal supervisors at TESLA, including but not limited to, Gerhard Pretorious, Jeff Jones, Jacob Nocon, Nick Gicinto, the human resources department, and the legal department.

51. Plaintiff was terminated from TESLA because of his reporting of misconduct to his internal supervisors at TESLA.

52. The misconduct Plaintiff reported includes, but is not limited to, the intentional cover-up of significant material thefts at the Gigafactory by TESLA, unlawful violations of State of Nevada and union contracts, TESLA spying on its employees, TESLA's cover-up of organized crime activity at the Gigafactory, and TESLA's active concealment and participation in unlawful conduct.

53. Plaintiff believes the misconduct alleged in these pleadings constitute violations of federal criminal law provisions prohibiting mail, wire, or bank fraud, rules and regulations of the SEC, or provisions of federal law relating to fraud against shareholders.

54. Plaintiff was damaged by TESLA's violation of the whistle blower provisions of the Sarbanes Oxley Act.

55. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## TORTIOUS DISCHARGE AGAINST PUBLIC POLICY
(Against All Defendants)

56. PLAINTIFF hereby incorporates paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57. Plaintiff was terminated from his employment with TESLA in retaliation for reporting ongoing issues at the Gigafactory to his supervisors and superiors which he believed to be violations of various state and federal laws and regulations, including, but not limited to:

   a. The ongoing and substantial theft of materials from the Gigafactory and TESLA's attempts to cover those thefts up in order to prevent shareholders from finding out about the significant financial losses the company was suffering therefrom. Plaintiff believed this to be in violation of the Sarbanes-Oxley Act of 2002 and other laws.

   b. The ongoing problem with drug trafficking occurring at the Gigafactory and its relationship to Mexican drug cartel activity and the material thefts occurring at the Gigafactory. Plaintiff also reported TESLA's attempts to cover-up these issues in order to hide the information from its shareholders. Plaintiff believed this to be in violation of the Sarbanes-Oxley Act of 2002 and other laws.

    c. TESLA's illegal and unlawful surveillance of its employees' personal electronic devices. Plaintiff believed this to be in violation of various wiretapping laws including NRS 200.620 through NRS 200.690, 18 U.S. Code Chapter 119, and other state and federal laws.

    d. The systematic termination of employees who raised concerns about illegal practices at the Gigafactory and other whistleblowers in violation of state and federal whistleblower protection laws.

    e. TESLA's attempts to cover-up reported violations/breaches of contracts between TESLA and the State of Nevada relating to the use of union and non-union employees at the Gigafactory. Plaintiff believed these actions to be in violation of various state laws aimed at protecting the State of Nevada from fraud.

58. In terminating PLAINTIFF, TESLA's actions were willful, malicious, fraudulent, oppressive, and/or calculated to conceal information from the public, TESLA's shareholders, and in an effort to further their attempts to violate state and federal law.

59. There is a strong and compelling public policy in the State of Nevada against employers requiring employees to participate in illegal activities or perform tasks that are illegal. There is also a strong and compelling public policy in the State of Nevada against employers terminating employees for whistleblowing activities.

60. As a direct and proximate result of TESLA's tortious discharge as alleged herein, Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, damage to reputation, and loss of wages and benefits. Plaintiff is reasonably certain to continue to suffer these damages in the future.

61. Plaintiff requests relief as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, SEAN GOUTHRO, prays that this Court grant the following relief:

A. Economic Losses, plus prejudgment interest;

B. Compensatory Damages in accordance with 18 U.S.C. §1514A(c)(2), 42 U.S.C. §1983, and other applicable statutes and law;

C. Reasonable attorneys' fees;

D. Punitive Damages;

E.  Costs of suit incurred herein; and

F.  Such other and further relief as the court deems just and proper

DATED this 10th day of February, 2020.     WATKINS & LETOFSKY, LLP

*/s/ Daniel R. Watkins*

By: _____
Daniel R. Watkins
Nevada State Bar No. 11881
Joseph M. Ortuno
Nevada State Bar No. 11233
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Office:(702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Sean Gouthro

## **REQUEST FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b) and 42 U.S.C. §1981a, Plaintiff demands a trial by jury in this action on all issues so triable.

DATED this 10th day of February, 2020.    WATKINS & LETOFSKY, LLP

*/s/ Daniel R. Watkins*

By: _____
Daniel R. Watkins
Nevada State Bar No. 11881
Joseph M. Ortuno
Nevada State Bar No. 11233
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Office:(702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Sean Gouthro